SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**State v. Michael A. Jackson (A-11-19) (082735)**

**Argued March 31, 2020 -- Decided July 2, 2020**

**TIMPONE, J., writing for the Court.**

The Court addresses whether a defendant facing the same charges as a cooperating witness should be barred from exploring that adverse witness's sentencing exposure.

In November 2014, L.G. returned home and observed a man exiting L.G.'s front door, carrying L.G.'s television. L.G. ran inside his house and found the back door ajar and his television, laptop computer, and gaming system missing. He described the man carrying the television to police officers. He said that he suspected his ex-girlfriend Tiffany Taylor's involvement because he saw her car several times before and after the crime. The police detained two men who fit the suspect's description, and L.G. identified Javon Clarke as the person carrying his television. The other detainee was defendant, who L.G. recognized as Taylor's ex-boyfriend. Based on L.G.'s identification, the police arrested Clarke, who provided a statement that same day inculpating defendant and Taylor, who were each indicted for burglary, theft, and conspiracy to commit burglary.

At trial, Clarke testified that defendant participated in the burglary of L.G.'s house. On cross-examination, the defense highlighted several discrepancies between the statement Clarke initially gave to the police and his in-court testimony. Counsel then asked, "Now, when you gave the plea it was a plea bargain as you understood it, correct?" Clarke responded affirmatively and also agreed he was represented by an attorney. When defense counsel asked, "And your attorney explained to you that you were facing three to five years for a third-degree burglary, correct?" the State objected.

At sidebar the court instructed, "I want to stay away from the ranges because indirectly that implicates what a jury might be exposed to think if your clients are charged with the same crime." (emphasis added). The court gave a curative instruction and indicated that the jurors should not consider the last question. Defense counsel inquired twice more about sentencing ranges in the course of the trial and was again directed to stay away from that topic. The court gave another curative instruction.

Cross-examination ultimately revealed only that Clarke would avoid state prison and receive 180 days in county jail in return for providing truthful testimony.

1

At summation, the State stressed that "[Clarke] was never offered the lowest sentence. On that type of crime, . . . he could have been given straight probation. Straight probation. And he was offered, by the [S]tate, three years in state prison. The [S]tate didn't take that back and give him 180 days. The judge did it . . . ."

The jury acquitted defendant and Taylor of burglary and theft but convicted them of conspiracy to commit burglary. The Appellate Division affirmed defendant's conviction. The Court granted certification. 239 N.J. 517 (2019).

**HELD:** Under the circumstances here, the jury should have had full access to the cooperating witness's plea agreement history through the defense counsel's unfettered examination of that history. The trial court's limitations on defendant's cross examination were in error. Defendant was deprived of his right to confrontation and denied a fair trial. His conviction for conspiracy to commit burglary is vacated.

1. The Confrontation Clause permits a defendant to explore, through cross-examination, the potential bias of a prosecution's witness. A trial court may impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant. But, the competing interest proffered to limit a defendant's confrontation right must be closely examined. In State v. Bass, the Court held that, "[i]f a witness faces a pending investigation or unresolved charges when he or she gives a statement to law enforcement, cooperates with the prosecution in preparation for trial, or testifies on the State's behalf, that investigation or charge is an appropriate subject for cross-examination." 224 N.J. 285, 305 (2016). That determination is consistent with United States Supreme Court holdings. (pp. 13-15)

2. Trial courts often withhold sentencing information from juries because the jury should not be influenced by a consideration of what will be the result of its verdict. New Jersey state courts have not addressed the scenario in which a trial court limits cross-examination into the term of imprisonment a cooperating witness avoided by testifying for the government where the defendant and witness were charged with the same crime. The Court reviews cases from other states and notes that most federal courts have based their determinations on whether the jury had otherwise heard enough information to evaluate the witness's credibility. (pp. 15-18)

3. Although the cooperating witness in Bass faced different charges than the defendant, the essential principles announced in Bass apply here as well. Defendant was entitled to question Clarke about his subjective understanding of the benefit of his plea bargain, including what sentence he faced and what was offered in the plea agreement. This case is a particularly compelling example of the import of a fulsome right to confront adverse witnesses. Clarke was the State's key witness testifying at trial, and his testimony was the only evidence tying defendant to the crime. The record also reveals that Clarke

2

acknowledged lying to police officers on several occasions about the events that transpired during the burglary. Additionally, the State acknowledged at oral argument that Clarke was extended-term eligible and accordingly could have faced up to ten years in prison. The potential for an extended-term state prison sentence may have served as a powerful incentive for Clarke to cooperate with the State. The jury should have been made aware that Clarke entered into a plea bargain with the State and that, by virtue of his plea bargain, Clarke faced only 180 days in county jail instead of a lengthy term in state prison. Defense counsel had the right to explore potential bias on Clarke's part in his role as the prosecution's key witness. (pp. 19-21)

4. The core of the jury's duty is to determine criminal culpability, not punishment. Especially in a case like this, the trial court should instruct the jury not to speculate about or consider a defendant's potential sentence when deciding whether the State has proven the charges alleged beyond a reasonable doubt. The Court refers to the Committee on Model Criminal Jury Charges the development of a Model Criminal Jury Charge addressing this situation. A jury charge was given here, and courts routinely use jury instructions as safeguards to adequately address concerns relating to jury nullification. The Court does not favor a process in which trial judges perform a generalized gatekeeping function and try to decide whether cross-examination would adequately convey enough information about a witness's credibility without allowing questions about a defendant's sentencing range, but the Court explains there is still a place for objections under N.J.R.E. 403. (pp. 21-22)

5. The trial court's error here was compounded at summation when the prosecutor was permitted to take advantage of the floor of Clarke's sentencing range to make the argument that the plea deal of three years was not so good. The trial court failed to apply its ruling consistently. The manner in which the prosecutor exploited the trial court's rulings, moreover, was improper. (pp. 22-23)

6. The State substantially premised its case on the jury's acceptance of Clarke as a credible witness. Had the jury been aware that Clarke was potentially facing an extended term of ten years in state prison when taking a plea deal of 180 days in county prison, it may well have drawn an inference of bias, which could have perhaps yielded a full acquittal. The Court cannot conclude beyond a reasonable doubt that the trial court's limitation on defendant's cross-examination of Clarke constituted harmless error. And the court's general instruction was not sufficient to overcome the imbalance created through its inconsistent approach to the witness's sentencing exposure. (pp. 23-25)

**REVERSED and REMANDED for a new trial on the conspiracy charge.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE TIMPONE'S opinion.**

SUPREME COURT OF NEW JERSEY

A-11 September Term 2019

082735

State of New Jersey,

Plaintiff-Respondent,

v.

Michael A. Jackson,

Defendant-Appellant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
| --- | --- |
| March 31, 2020 | July 2, 2020 |

Peter T. Blum, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Peter T. Blum, of counsel and on the briefs).

Milton S. Leibowitz, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Lyndsay V. Ruotolo, Acting Union County Prosecutor, attorney; Milton S. Leibowitz, of counsel and on the briefs, and Michele C. Buckley, Special Deputy Attorney General/Acting Assistant Prosecutor, on the briefs).

Alexander Shalom argued the cause for amicus American Civil Liberties Union of New Jersey (American Civil Liberties of New Jersey Foundation, attorneys;

Alexander Shalom, Elyla Huertas, and Jeanne LoCicero, on the brief).

Michael Gilberti argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (Jardim Meisner & Susser, attorneys; Michael Gilberti, on the brief).

Adam D. Klein, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Gurbir S. Grewal, Attorney General, attorney; Adam D. Klein, of counsel and on the brief).

JUSTICE TIMPONE delivered the opinion of the Court.

In this appeal, we address whether a defendant facing the same charges as a cooperating witness should be barred from exploring that adverse witness's sentencing exposure. Under the circumstances here, we find defendant was deprived of his right to confrontation and denied a fair trial.

Tiffany Taylor, Javon Clarke, and defendant Michael A. Jackson were apprehended and charged with participating in a burglary. Clarke accepted a cooperating plea offer in which he agreed to provide testimony inculpating defendant and Taylor in exchange for a three-year sentence. The trial judge urged modification of the plea agreement, suggesting Clarke's sentencing exposure be lowered to 180 days in county jail, and probation. The new deal was consummated. Clarke thereafter testified that defendant and Taylor participated in the burglary.

2

In an effort to demonstrate Clarke's bias in favor of the prosecution, counsel for Jackson sought to elicit during cross-examination the sentencing range of three to five years' imprisonment that Clarke would have faced had he not accepted a plea offer in exchange for agreeing to testify against defendant.

The trial court barred defense counsel's line of questioning regarding Clarke's maximum sentencing exposure, explaining that such information could improperly prejudice the jury if they heard Clarke's maximum sentencing exposure on the same crimes as defendant. The trial court permitted defense counsel to elicit testimony regarding only the initial plea offer of three years' imprisonment and the final plea agreement, in which Clarke accepted 180 days' imprisonment in county jail, plus probation. The trial court permitting the State to use the low end of the sentencing range led to testimony that Clarke had not received "such a good deal."

The jury acquitted defendant and Taylor of burglary and theft but convicted them of conspiracy to commit burglary. Defendant was sentenced to an extended term of seven years' imprisonment.

On appeal, defendant argued that the trial court's limitation on the cross-examination of Clarke deprived him of his constitutional right to confront a key adverse witness. Defendant also argued that the limitation was exacerbated when the State was allowed to reference the low end of the range.

3

The Appellate Division rejected defendant's arguments and affirmed his conviction.

We now reverse the Appellate Division's judgment. The jury should have had full access to Clarke's plea agreement history through the defense counsel's unfettered examination of that history. We hold the trial court's limitations on defendant's cross examination to be in error.

I.

We derive our summary of the facts from the record.

On November 6, 2014, L.G. received three phone calls from his ex-girlfriend, co-defendant Taylor, in which she asked if she could come over and borrow money. L.G. refused both requests, claiming to have to attend to other things.

Later that morning, while standing on his porch, L.G. saw Taylor's car drive by his home. For a short period, he left to drive a friend home. On his way back, he spotted Taylor's car again and became suspicious. He decided to pass his house and circle around the block to see if he could spot her again. Not seeing Taylor's car, a third time, he drove back home.

Upon arrival, L.G. observed a man exiting L.G.'s front door, carrying L.G.'s television. L.G. drove his car onto the sidewalk toward the man -- who immediately dropped the television and fled in response. L.G. exited his car,

4

ran inside his house, and found the back door ajar and his television, laptop computer, and gaming system missing.

L.G. left his house, called the police, and began walking toward the street. L.G. saw Taylor's car exit a dead-end street that had unobstructed access to the rear of his house. When officers from the Rahway Police Department arrived, L.G. described the man who left the house with his television. He said that he suspected Taylor's involvement because he saw her car several times before and after the crime. He provided them with a description of her car.

While the Rahway officers were with L.G., they received notification that the Linden Police Department had detained two men who fit the suspect's description. Rahway Police transported L.G. to the location where the suspects were detained. L.G. identified Clarke as the person he saw leaving the front door of his house carrying his television. The other detainee was defendant, who L.G. recognized as Taylor's ex-boyfriend. Linden police officers also found a car matching the description of Taylor's. Following up on the call, Rahway police officers found the car and discovered that it was still warm to the touch.

Based on L.G.'s identification, the Rahway Police arrested Clarke, who provided a statement that same day inculpating defendant and Taylor.

5

## II.

Defendant and Taylor were indicted for third-degree burglary, N.J.S.A. 2C:18-2; third-degree theft of property with value in excess of $500, N.J.S.A. 2C:20-3; and third-degree conspiracy to commit burglary, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:18-2. The State tried them jointly before a jury.

At trial, Clarke testified that defendant participated in the burglary of L.G.'s house. According to Clarke, defendant called him on the morning of the burglary and then picked him up in defendant's car. Defendant and Clarke drove to Taylor's home where they found her waiting in her car; they then drove to L.G.'s house, while Taylor drove separately in her own car. Clarke explained that when they neared L.G.'s house, they saw two men standing on the porch. Once the two men left, defendant and Clarke walked to the rear of the house where defendant broke the back-door window to gain entry.

Clarke testified that, once inside, he took the television and defendant took the gaming system and laptop computer. Clarke exited through the front door. He saw L.G. returning home, dropped the television, and ran to defendant's car. They drove toward Taylor's home where they were stopped by police officers.

On cross-examination, the defense highlighted several discrepancies between the statement Clarke initially gave to the police on the day of his

arrest and his in-court testimony about the burglary. The defense elicited from Clarke that he lied to the police about his age and whether he entered L.G.'s house and removed items from it. Clarke acknowledged that he lied to the police in his initial statement and agreed with defense counsel that there were "numerous inconsistencies" between his statement to the police and his testimony at trial, as well as "many instances where [he] did not tell the truth."

During defense counsel's cross-examination of Clarke, the following exchange occurred:

> [DEFENSE COUNSEL:] Okay. Now, when you gave the plea it was a plea bargain as you understood it, correct?
>
> [CLARKE:] Yes.
>
> [DEFENSE COUNSEL:] And you were represented by an attorney, correct?
>
> [CLARKE:] Yes.
>
> [DEFENSE COUNSEL:] And your attorney explained to you that you were facing three to five years for a third-degree burglary, correct?
>
> [CLARKE:] Yes.
>
> [STATE:] Your Honor, the State objects and believes it's inappropriate to talk about the term that a defendant is going to be subject to.

At sidebar, defense counsel argued that Clarke's knowledge of the sentencing range was necessary to show Clarke's state of mind, while the State

7

responded that evidence of the sentencing range could unfairly apprise the jury of defendant's potential exposure to prison time, because Clarke faced the same charges as defendant. The trial court ruled as follows:

> Well, I don't have an issue with you guys talking about what the offer was that the State put on the table. But I want to stay away from the ranges because indirectly that implicates what a jury might be exposed to think if your clients are charged with the same crime (indiscernible).
>
> So, I don't want them prejudiced at all in this case. If you want to talk about the scope of what the State was offering and didn't they offer you, you know like a five flat or something like that. And ultimately to just settle on this I don't have a problem with that.
>
> [(emphasis added).]

Defense counsel asked to let that question stand and for a curative instruction clarifying that the sentencing range Clarke faced was separate from the defendants'. The trial court rejected defense counsel's request and gave the following instruction to the jury:

> Ladies and gentlemen, I'm going to strike the last question and any comment thereto. I'm going to allow it to be rephrased. But I want to give you a limited or a curative instruction that what may have been discussed or what may come out as to what this individual that's testifying may have discussed in terms of his involvement is separate and apart. It has nothing to do with the defendants that are on trial.
>
> So, his bargaining or discussion is separate and apart and it is no way implicated or inferred upon the other

8

defendants.  So, you can't look at what was said or done with this defendant as to the other defendants.  You're just here as finders of the fact.

Cross-examination ultimately revealed only that Clarke would avoid state prison and receive 180 days in county jail in return for providing truthful testimony.

The State also called an assistant prosecutor who had participated in negotiating the plea deal with Clarke.  On cross-examination, defendant's counsel elicited the following exchange:

> [DEFENSE COUNSEL:]  So the three flat -- now the three flat was the lower end of the spectrum of what Mr. Clarke was facing, correct?
>
> [ASSISTANT PROSECUTOR:]  It was -- yeah.  Because it would be three to five years if --
>
> [DEFENSE COUNSEL:]  Right.
>
> [ASSISTANT PROSECUTOR:]  Yeah.

Later, they returned to discussing the plea deal:

> [DEFENSE COUNSEL:]  Right.  And so your deal [offered] was a three flat which was considerably low, . . . the lowest spectrum, correct?
>
> [ASSISTANT PROSECUTOR:]  I would disagree it's low.  It was State Prison, sir.
>
> [DEFENSE COUNSEL:]  Right.  But he was facing, as you said, from three to five, correct?
>
> [ASSISTANT PROSECUTOR:]  Sure.

9

The State objected, and the parties reiterated their arguments concerning the significance of the sentencing range at sidebar. The trial court again directed the defense to "stay away from the range," but ruled that he would allow defense counsel to elicit testimony regarding the initial offer of three years and the subsequent deal of 180 days. This time, the trial court did not strike the testimony.

Defense counsel once more alluded to the sentencing range for burglary:

> [DEFENSE COUNSEL:] So as part of the plea deal instead of getting the maximum he was at the lowest end possible of the spectrum considering the crime, correct?
>
> [ASSISTANT PROSECUTOR:] No. No. The lowest end possible would have been more probation without any custody.

At the conclusion of the assistant prosecutor's testimony, the trial court gave another limiting instruction to the jury that Clarke's plea deal was "separate and apart" and had "no bearing on the two individuals that are on trial before you today." In addition, Clarke's plea transcript was admitted into evidence with the maximum sentence exposure redacted.

At summation, the State made the following argument regarding Clarke's plea deal:

> And [Clarke] was never offered the lowest sentence. On that type of crime, [the assistant prosecutor]

10

testified, that he could have been given straight probation. Straight probation. And he was offered, by the [S]tate, three years in state prison. The [S]tate didn't take that back and give him 180 days. The judge did it on his fourth page.

So, you're not talking about the [S]tate just coming in and lying on the floor, like, please, testify against your two codefendants. Pretty please. No. That's not what they did. Three years in state prison is no picnic. And that's what we offered because we thought the crime was serious enough and he had a couple prior convictions. And the judge gave him the 180 days. So, we weren't trying to be more lenient. The judge did. The judge has a right to do that. The judge did it. He served his time.

The Appellate Division affirmed defendant's conviction, rejecting defendant's argument that the trial court deprived him of his constitutional right to confront an adverse witness by limiting the cross-examination of Clarke. The court reasoned that "[d]efendant's main goal was to undercut Clarke's credibility by demonstrating that he had negotiated a good plea deal and that was the motivation for his testimony" and that "[t]he record amply demonstrate[d] that defense counsel clearly made that point." The court emphasized that "[t]he jury heard several times that Clarke was exposed to at least three years in prison if he did not negotiate a favorable plea arrangement." The court concluded that, considering the full scope of the cross-examinations of both Clarke and the assistant prosecutor, "defendant's

11

constitutional right to confront and challenge Clarke's motivation for testifying as a State witness was not unduly restricted."

We granted defendant's petition for certification, 239 N.J. 517 (2019), and granted amicus curiae status to the Attorney General of New Jersey (AG), the American Civil Liberties Union of New Jersey (ACLU), and the Association of Criminal Defense Lawyers of New Jersey (ACDL).

III.

A.

We review evidentiary rulings under an abuse of discretion standard. State v. Nantambu, 221 N.J. 390, 402 (2015). "[A] trial court is afforded 'considerable latitude regarding the admission of evidence,' and [should] be reversed only if the court abused its discretion." State v. Nelson, 173 N.J. 417, 470 (2002) (quoting State v. Feaster, 156 N.J. 1, 82 (1998)). "[W]e accord no deference to the trial court's legal conclusions." Nantambu, 221 N.J. at 402.

If the "evidence is deemed relevant, it is admissible, unless 'its probative value is substantially outweighed by the risk of [ ] undue prejudice' or some other bar to its admission is properly interposed." Ibid. (alteration in original) (citations omitted) (quoting Brenman v. Demello, 191 N.J. 18, 34-35 (2007)). The trial court "has broad discretion to exclude evidence as unduly prejudicial pursuant to N.J.R.E. 403." Ibid.

12

B.

The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee the right of defendants to confront the witnesses against them.  The trial court's limitation on defendant's cross-examination of Clarke implicates that right.  In addition, our evidence rules underscore that principle by permitting the accused to cross-examine witnesses about the subject matter of any direct examination and matters affecting the witnesses' credibility.  N.J.R.E. 611(b).

Our system permits exploration, through cross-examination, of a witness's motivation in testifying.  Delaware v. Van Arsdall, 475 U.S. 673, 678-79 (1986).  Put plainly, the Confrontation Clause permits a defendant to explore, through cross-examination, the potential bias of a prosecution's witness.  State v. Bass, 224 N.J. 285, 301 (2016).

There are potential limitations on the right to confrontation, which "may, in appropriate circumstances, bow to competing interests."  State v. Budis, 125 N.J. 519, 531 (1991).  A trial court may "impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant."  Van Arsdall, 475 U.S. at 679.  But, the competing interest proffered to limit a defendant's confrontation right must

13

"be closely examined." Budis, 125 N.J. at 532 (quoting Chambers v.

Mississippi, 410 U.S. 284, 295 (1973)). The trial court shall determine

"whether the circumstances fairly support an inference of bias" or whether the

proposed examination raises any concerns. Bass, 224 N.J. at 303.

In Bass, we held that, "[i]f a witness faces a pending investigation or

unresolved charges when he or she gives a statement to law enforcement,

cooperates with the prosecution in preparation for trial, or testifies on the

State's behalf, that investigation or charge is an appropriate subject for cross-

examination." Id. at 305. There, the only prosecution eyewitness to a deadly

shooting had been charged in an unrelated case with first-degree robbery and

weapons offenses. Id. at 305-06. The witness accepted a plea offer enabling

him to enter a guilty plea to third-degree charges and receive a probationary

sentence. Id. at 306. When the defendant's counsel began cross-examining

the eyewitness on the plea bargain, the trial court limited the questioning to the

witness's guilty plea to charges of theft and burglary and the fact that the

witness was on probation. Id. at 307. The trial court reasoned that the

eyewitness had explicitly agreed to testify against others, but not defendant, as

part of his plea deal. Ibid.

We disagreed, holding that the defendant's confrontation right had been

violated. See ibid. This Court explained that, for his role in the unrelated

14

case, the cooperating witness could have received a life sentence, but instead garnered a probationary sentence. Id. at 306. We further underscored that the prospect of a life sentence "may have served as a powerful incentive for [him] to cooperate with the State as it prepared for defendant's trial." Id. at 307. Clearly, inhibiting the defendant's counsel from probing the charges the eyewitness faced was error. Ibid.

Our reasoning in Bass is four-square with the United States Supreme Court's determination in Van Arsdall, 475 U.S. at 679 that the trial court erred when it precluded cross-examination into a cooperating witness's sentencing reduction in, and with its further holding in Davis v. Alaska, 415 U.S. 308, 315-20 (1974) that a defendant's confrontation right was violated when the trial court prevented his counsel from exploring on cross-examination the bias of a witness who was on probation for an offense unrelated to the defendant's alleged offenses.

C.

Trial courts often withhold sentencing information from juries, State v. Short, 131 N.J. 47, 61-63 (1993), because "the jury should not be influenced by a consideration of what will be the result of its verdict, nor should its attention be distracted from its chief function," State v. Conforti, 53 N.J. 239, 245 (1969) (quoting State v. Bell, 102 N.J. Super. 70, 76 (App. Div. 1968)).

15

New Jersey state courts have not addressed the scenario in which a trial court limits cross-examination into the term of imprisonment a cooperating witness avoided by testifying for the government where the defendant and witness were charged with the same crime.  Other courts have.

In Jarrett v. State, the Indiana Supreme Court found that a trial judge erred by not allowing defense counsel to cross-examine accomplices about the penalties they would have faced had they not agreed to testify against the defendant.  498 N.E.2d 967, 968-69 (Ind. 1986).  The court indicated that the prosecution's concern "that such questioning amounted to indirect attempts by the defense to inform the jury of the potential penalty facing the defendant" was outweighed by the "significant harm" of preventing the jury "from learning the extent of benefit received by a witness in exchange for his testimony."  Id. at 968.  The court ruled that "[t]he exposure of a witness's motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination," to which it found "the State's desire to censor sentencing information . . . clearly subordinate."  Id. at 968-69.

In State v. Brown, the South Carolina Supreme Court found that a defendant was unfairly prejudiced because he was not permitted to ask a cooperating accomplice about her substantial sentencing exposure absent a

16

plea agreement. 399 S.E.2d 593, 594 (S.C. 1991). Although the inquiry would have led to the jury's discovery of the defendant's own sentencing exposure, the court emphasized that the plea agreement reduced the accomplice's term of imprisonment from twenty-five years without parole to seven-and-one-half years. Ibid. Given the significance of that benefit and the resulting potential for bias, the court concluded that the defendant's "right to meaningful cross-examination outweighs the State's interest here." Ibid.; see also State v. Mizzell, 563 S.E.2d 315, 317-18 (S.C. 2002) (finding that trial court's preclusion of inquiry into a witness's charges and sentence, which were the same as those faced by the defendants, was not harmless error).

Conversely, in State v. Jolley, the South Dakota Supreme Court ruled that the trial court did not err by preventing defense counsel from exploring the life sentence the cooperating accomplice faced absent her testimony. 656 N.W.2d 305, 309-10 (S.D. 2003). Initially, the defendant and cooperating accomplice were charged with the same crimes. Id. at 307. The court reasoned that there was no abuse of discretion because, notwithstanding the trial court's limitation, the defendant sufficiently exposed the cooperating accomplice's potential bias: "[t]he defense was able to cross-examine [the accomplice] about her plea agreement, that she had made inconsistent statements and flat out lied continuously throughout the investigation, that the

17

murder charges against her had been dropped, and that she received a lesser sentence through her cooperation." Id. at 310.

In State v. Greenleaf, the Supreme Court of Minnesota likewise found that the trial court did not err in holding that defendant could not inquire into the precise number of months by which a codefendant's sentence was reduced in exchange for his testimony, because that limitation "properly prevented the jury from speculating about possible sentences," given that the testimony "might mislead the jury regarding the number of months another defendant, if convicted, might be confined." 591 N.W.2d 488, 502 (Minn. 1999).

Most federal courts have decided this issue without establishing a bright-line rule, but instead based their determinations on whether the jury had otherwise heard enough information to evaluate the witness's credibility. See, e.g., United States v. Noel, 905 F.3d 258, 269 (3d Cir. 2018); United States v. Rushin, 844 F.3d 933, 938-40 (11th Cir. 2016); United States v. Luciano-Mosquera, 63 F.3d 1142, 1153 (1st Cir. 1995).

IV.

Consistent with the principles set forth above, we consider whether the trial court here erred when it limited defendant from exploring Clarke's sentencing exposure as well as his subjective understanding of the benefit of his plea bargain that led to his reduced sentence. In doing so, we must balance

18

defendant's right to confront Clarke with the full exposure of his potential sentence against the trial court's concern that the jury may deadlock or find defendant not guilty if it inferred his sentencing exposure from the charges Clarke faced.

A.

In <u>Bass</u>, the cooperating witness faced different charges than the defendant, and we found that "a charge against a prosecution witness that is unrelated to the current charge against the defendant may be an appropriate topic for cross-examination." 224 N.J. at 304. Here, the cooperating witness, Clarke, faced the same charges as defendant -- burglary, theft, and conspiracy to commit burglary. Notwithstanding that distinction, the essential principles announced in <u>Bass</u> apply here as well. "[I]f a witness faces a pending investigation or unresolved charges when he or she gives a statement to law enforcement, cooperates with the prosecution in preparation for trial, or testifies on the State's behalf, that investigation or charge is an appropriate subject for cross-examination." <u>Id.</u> at 305.

Defendant was entitled to question Clarke about his subjective understanding of the benefit of his plea bargain, including what sentence he faced and what was offered in the plea agreement. This case is a particularly compelling example of the import of a fulsome right to confront adverse

19

witnesses. Clarke was the State's key witness testifying at trial, and his testimony was the only evidence tying defendant to the crime. The record also reveals that Clarke acknowledged lying to police officers on several occasions about the events that transpired during the burglary. Additionally, the State acknowledged at oral argument that Clarke was extended-term eligible due to his prior convictions and accordingly could have faced up to ten years in prison had the prosecutor sought the extended term.

The potential for an extended-term state prison sentence may have served as a powerful incentive for Clarke to cooperate with the State. The trial court barred all testimony about the maximum sentence Clarke faced, which in turn prevented the jury from hearing the effect that sentencing exposure had on Clarke's mindset when negotiating his plea with the State. The jury should have been made aware that Clarke entered into a plea bargain with the State and that, by virtue of his plea bargain, Clarke faced only 180 days in county jail instead of a lengthy term in state prison.

We conclude that the trial court erred when it barred defense counsel from pursuing the line of questioning during cross-examination concerning Clarke's plea bargain and his sentencing exposure. Defense counsel had the right to explore potential bias on Clarke's part in his role as the prosecution's key witness. See State v. Sugar, 100 N.J. 214, 230 (1985) ("[A] defendant

must be afforded the opportunity through effective cross-examination to show bias on the part of adverse state witnesses.").

We recognize that "[t]he core of the jury's duty is to determine criminal culpability, not punishment." Short, 131 N.J. at 61. Especially in a case like this, the trial court should instruct the jury not to speculate about or consider a defendant's potential sentence when deciding whether the State has proven the charges alleged beyond a reasonable doubt. We refer to the Committee on Model Criminal Jury Charges, for our consideration, the development of a Model Criminal Jury Charge addressing this situation.

Other model jury charges given before deliberations underscore the jurors' obligations. Importantly, the trial court provided the model charge about a biased witness to the jury in this case as follows:

> [Y]ou may not use [Clarke]'s plea of guilty as evidence that these defendants are guilty of the crimes they are charged with. The law requires that the testimony of such witnesses be given careful scrutiny. In weighing his . . . testimony, therefore, you may consider whether he has a special interest in the outcome of the case and whether his testimony was influenced by the hope or expectation of any favorable treatment or reward or by any feelings of revenge or reprisal.

Our courts routinely use jury instructions as safeguards to adequately address concerns relating to jury nullification. In fact, the State concedes that on a routine basis in most trials, a cooperating witness's maximum sentencing

21

exposure is explored through cross-examination by defense counsel, and that the trial court's limitation in this case was an outlier. Defendant has a constitutional right to elicit Clarke's subjective understanding of the benefit of his plea bargain. The trial court erred by preventing defendant from exploring Clarke's sentencing exposure.

We do not favor a process in which trial judges perform a generalized gatekeeping function and try to decide whether cross-examination would adequately convey enough information about a witness's credibility without allowing questions about a defendant's sentencing range. That said, there is still a place for objections under N.J.R.E. 403. If, for example, cross-examination improperly suggested to the jury that a witness would receive consecutive sentences on multiple counts that would instead merge at sentencing, the judge could properly curtail that line of questioning.

B.

The trial court's error here was compounded at summation when the prosecutor was permitted to take advantage of the floor of Clarke's sentencing range -- "straight probation" -- to make the argument that the plea deal of three years was not so good. Meanwhile, defendant was banned from raising Clarke's maximum potential sentence -- ten years' imprisonment -- to counter that the plea deal was indeed a good one. The trial court failed to apply its

22

ruling consistently. It denied defendant his confrontation rights by erroneously prohibiting testimony about Clarke's maximum sentencing exposure while permitting testimony about Clarke's potential minimum sentence of probation.

The manner in which the prosecutor exploited the trial court's rulings, moreover, was improper. The trial court effectively barred defendant from arguing Clarke's bias during summations while the prosecution made its own argument unimpeded.

C.

Our inquiry does not end there. "We must also decide whether the trial court's error was 'harmless beyond a reasonable doubt.'" Bass, 224 N.J. at 307 (quoting Van Arsdall, 475 U.S. at 684); see also State v. Prall, 231 N.J. 567, 581 (2018) (noting, in the context of evidentiary determinations, that we "cannot end our analysis when we find an abuse of discretion; rather, we must then determine whether any error found is harmless or requires reversal"). This Court will not reverse any error by the trial court "unless it is of such a nature as to have been clearly capable of producing an unjust result." State v. Castagna, 187 N.J. 293, 312 (2006) (quoting R. 2:10-2). More specifically, this Court considers whether the "error [was] 'sufficient to raise a reasonable doubt as to whether [it] led the jury to a result it otherwise might not have

23

reached.'" Prall, 231 N.J. at 581 (alterations in original) (quoting State v. Daniels, 182 N.J. 80, 95 (2004)).

The State contends that even if the trial court erred in limiting the cross-examination of Clarke, such error was harmless because the assistant prosecutor's testimony elicited Clarke's maximum exposure of three-to-five years in state prison. We are not persuaded. Clarke's subjective perception of his exposure, along with a factual description of the plea agreement, both matter. See, e.g., United States v. Ambers, 85 F.3d 173, 176 (4th Cir. 1996) ("The critical question, we have observed, is whether the defendant is allowed an opportunity to examine a witness' 'subjective understanding of his bargain with the government,' 'for it is this understanding which is of probative value on the issue of bias.'" (quoting Hoover v. Maryland, 714 F.2d 301, 305, 306 (4th Cir. 1983)). But the trial court improperly barred defendant from eliciting this testimony from Clarke.

The State substantially premised its case on the jury's acceptance of Clarke as a credible witness. Had the jury been aware that Clarke was potentially facing an extended term of ten years in state prison when taking a plea deal of 180 days in county prison, it may well have drawn an inference of bias. Additionally, the jury acquitted defendant and Taylor of burglary and

24

theft. Such an inference of bias could have further affected Clarke's credibility as the State's key witness, and perhaps yielded a full acquittal.

We cannot conclude beyond a reasonable doubt that the trial court's limitation on defendant's cross-examination of Clarke constituted harmless error. And, although we note that the trial court instructed the jury that the arguments of counsel on openings and closings are not evidence, we cannot find that general instruction sufficient to overcome the imbalance created through the court's inconsistent approach to the witness's sentencing exposure.

Accordingly, the trial court's error regarding defendant's confrontation rights requires reversal of defendant's conviction for conspiracy to commit burglary. Defendant is entitled to a new trial on that charge.

V.

The judgment of the Appellate Division is reversed. We vacate defendant's conviction for conspiracy to commit burglary, and remand for a new trial on that charge consistent with this opinion.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE TIMPONE'S opinion.

25